Leo **STURDIVANT** et al., Appellants,

v.

**SALT RIVER VALLEY WATER USERS'
ASSOCIATION, an Arizona corporation, Appellee.**

No. 14850.

United States Court of Appeals
Ninth Circuit.

July 3, 1957.

**946**

Herbert B. Finn, Shute & Elsing, Phoenix, Ariz., for appellants.

Jennings, Strouss, Salmon & Trask, Richard G. Kleindienst, Irving A. Jennings, Phoenix, Ariz., for appellee.

Before STEPHENS, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an action brought by Leo Sturdivant "for himself and in behalf of 35 (thirty-five) others, each of whom is similarly situated" and has designated Sturdivant to bring it on his behalf against the Association[1] for accounting and back wages unpaid, in violation of the Fair Labor Standards Act.[2] Sturdivant, and each of the others designated, is a zanjero, "one who rides the ditch." They, together with others to the total number of sixty-two division zanjeros, are employed by the Association to control the flow of water in the irrigation system, turn water into and out of laterals of the farmers, as requested, perform maintenance and other duties, as directed.

The Association filed answer, and the cause was tried by the court without a jury. The defense was based upon two grounds. First, it was contended that the zanjeros were not engaged in activities covered by the Fair Labor Standards Act and Amendments. Second, the agreement between the Association and the Union, to which all these zanjeros belonged and which was negotiated by collective bargaining, was a bar to relief.

A considerable volume of testimony was taken. The trial court held for plaintiff. All the zanjeros were found to be under the provisions of the Act.[3] The trial court granted judgment in favor of each of the zanjeros for whom Sturdivant brought action in an amount which would compensate him for the difference between $.70 per hour, from January 25, 1950, through November 27, 1950, and an hourly rate of $.75, required by the minimum wage provision of the Act for this period.[4] The hours were figured according to the agreement with the Union hereinafter described. An appeal has been taken by thirty-five of the thirty-six persons mentioned in the judgment, as though each had been a plaintiff. No appeal was taken from the adverse judgment by the Association.

The main argument has been about the terms of the agreement, which was entered into between the Union and the Association, dated October 1, 1945, and which was used as a defense.

The evidence tended to show that the agricultural lands served with water by the Association were divided into sixty-two zanjero divisions. Each of such divisions comprises roughly an area of four thousand acres. The Association furnishes each zanjero with an isolated house, equipped with a telephone, in which he lives with his family, if he has one.

Each zanjero operated his division without direct supervision. The communication with the supervising employees and the main office was by telephone. Through this medium, requests and or-

---

1. Salt River Valley Water Users' Association.

2. 29 U.S.C.A. § 201 et seq.

3. This follows prior holdings of this Court. Reynolds v. Salt River Valley Water Users' Association, 9 Cir., 143 F.2d 863, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 611; Salt River Valley Water Users' Association v. National Labor Relations Board, 9 Cir., 206 F.2d 325.

4. 29 U.S.C.A. § 206(a) (1).

ders for service and other work were received by him, and by this he informed the watermaster of the quantities of water needed and other matters concerning the operation of the division. He mailed daily written reports to a central office. But he operated his division and did his work essentially without other supervision.

During the growing season, the zanjeros necessarily worked long hours and were on call day and night seven days a week. In the winter, they may have worked as little as three or four hours a day. When the zanjero was not performing duties for which he was paid, he was not under control of the Association and was at liberty to use and did use his time as he desired.

These zanjeros were represented by an apparently strong Union, the International Brotherhood of Electrical Workers Local Union 266, which was the certified collective bargaining agency for this class of employees of the Association, among others.

The original collective bargaining agreement, heretofore referred to, was dated October 1, 1945, but this has been renewed or renegotiated annually and amended from time to time since that date. These were intended to be the full agreements between the Union and the Association, covering wages, hours and working conditions. These agreements gave recognition to the nature of the work performed by the zanjeros and the irregular and fluctuating hours and the variation therein between the growing season and the winter months, together with the practical impossibility of supervision.

In order to meet this problem, each zanjero was required to maintain a written record of the various duties performed by him during each work week. In order to meet the difficulties just outlined, the agreements provided a schedule of these duties and a specified time which would be credited to a zanjero for the performance of that duty.

In order to minimize the variation between pay for winter months and the growing season, each zanjero was guaranteed by these agreements a weekly wage all year around of approximately $48.00, besides the accommodations furnished to him.

The agreements applied the time credits listed upon the schedule to determine the number of hours worked during the week. If the zanjero worked more than forty hours in a particular week, the wage was determined by dividing the guaranteed wage by the number of hours worked. This established the hourly rate of pay. If the latter were less than $.70, that figure was used as the hourly wage. If the figure arrived at by this computation were more than $.70, then the figure so computed set the hourly wage. Upon this base for forty hours, the zanjero was also paid time and a half for every hour which he worked over forty. The whole computation was based upon the time credits above described.

However, a somewhat cryptic provision contained in the agreement gave the zanjero a right to turn in an itemized, detailed statement of the hours worked each work week, if he believed his pay check did not cover the amount due him "based on the hours worked during the work week." If he did not make such a statement within five days after he received his pay check, "the computations made by the Association shall be binding upon the parties."

Procedurally, this course cannot be justified. The "complainant" Sturdivant has appealed and, if the course of the proceeding has been improper, the cause should be remanded.

The whole attack is upon the findings and conclusions of the trial court. The criticisms are, in general: First, it is objected that the Association did not pay the regular rate for the basic forty hours worked or time and one-half for overtime. Second, it is said the findings did not accord with the "Belo Plan" and the "Belo Amendment." Third, it is said the collective bargaining agreements are invalid because these provided for pay based not on hours worked, but

on the number of jobs performed irrespective of time worked, and that the zanjeros were not paid for all hours worked. Finally, it is assigned as error that no liquidated damages were allowed.

The basic approach of "complainant" is that the agreement was void upon its face because they were on duty continuously and therefore were entitled to credit for twenty-four hours in each day. This contention is completely refuted by the record. However, the hours and times which were worked were extremely irregular and can be only viewed as piecework.

Counsel for complainant said in defining their position: "It is our position in this case the zanjeros are on call for 24 hours a day and therefore they are working 24 hours a day."[5]

■ Insofar as the attack on the basic scheme of the agreements related to the computation of the basic pay, it should receive attention. An improper method of calculation would in and of itself demonstrate illegality. Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502. The Belo case held that an agreement providing for a basic rate for the first forty-four hours and not less than time and one-half for all in excess of forty-four hours, as well as a guaranteed weekly wage for the benefit of employees with fluctuating work weeks, was valid under the Act. The so-called Belo amendment[6] provided that such a plan, providing for a regular rate of pay not less than the statutory minimum, is valid, if employment is pursuant to a bona fide individual contract or a collective bargaining agreement, and there is provided a weekly guarantee of pay for not more than sixty hours.

The trial court held that neither of these had an invalidating effect on the agreements here. The method of spreading the guaranteed pay over the total number of hours worked and compensating for overtime by paying once and a half the basic hourly figure for every hour over forty was approved in Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. The Bay Ridge case has no applicability here. It was there held that, where a contract provided for bonus pay or extra compensation should be given for specialized hours, which would not be included in basic pay for the forty hours and thus would not be used in the computation of overtime, the entire scheme was illegal.

The trial court held that the validity of agreements containing guaranteed wage plans depends upon the facts in each case, and the Fair Labor Standards Act imposes no particular form of contract on the parties. The trial court also found these agreements met the requirements of the Act. The court specifically found that the time credits, noted above,

" * * * bear a substantially accurate relationship to the actual time required by Plaintiffs to perform all the work required of them in that Plaintiffs were not required to work time in excess of said agreed credits to perform all the work required."

The record bears out this finding. The situation called for a guaranteed wage plan. These were agricultural workers, who, because of peculiar circumstances, were compensated under the provisions of the Fair Labor Standards Act. Such labor is, by the terms of the legislation itself, usually excluded.[7] The record shows that the conditions of industrial labor did not prevail here. At certain periods of the year, there was practically no work to be done. The ditches were dry. In the growing season, the zanjeros were required to change water at times in the night and take orders for changes day or night. The work of each zanjero was necessarily done with a minimum of supervision. At

---

5. Transcript of Record, page 270.

6. 29 U.S.C.A. § 207(c).

7. See 29 U.S.C.A. § 213(a) (6).

all times, he was essentially his own supervisor. He was required by circumstances to keep his own records. Basically, his employment consisted of piecework.

As a result of these conditions, the Association furnished the house in which the zanjero and his wife and family, if any, lived. The zanjero himself kept records of his own time upon forms furnished by the Association. Several items on the schedule were accorded the actual time worked. There was complaint and some testimony that the zanjero was not always paid for the time worked and that the calculations of the Association were wrong. But the zanjero was given an opportunity to ask correction based upon his own records under the agreements.

■■ The situation called for some practical solution. The one chosen was arrived at by collective bargaining by a strong union. Of course, if the basic scheme of time allocation bore no relation to the actual times necessary for the particular operation, the fact that the agreements were negotiated over a course of years by collective bargaining would not render it legal. However, this circumstance should be considered in determining whether or not each agreement was fair on its face. There is very strong evidence to support the finding of the trial court that the agreements were arrived at in good faith and that there was a substantially accurate relationship between the time credits so agreed upon and the actual time necessary for the zanjero to perform all the work required of him.

■ Sturdivant takes exception to another finding of the trial court:

"The work performed by Plaintiffs for which they were compensated as hereinabove found constituted all the work performed by Plaintiffs for Defendant.

"Prior to January 25, 1950, Plaintiffs were compensated at an hourly rate which complied with the minimum wage provisions of the Federal Labor Standards Act; * * *."

This objection must be sustained. The finding is vague and indefinite and does not find the essential for a disposition of the issues formulated on the complaint.

The "complainant" was responsible for this error. The matter was treated at the trial as if the issue were the validity of the agreements exclusively. As has been noted above, if the basic allocation of hours and pay were illegal or if the time credits had not borne any relation to reality, this would have been sufficient. But the complaint set up that Sturdivant and others were not paid for all the hours which each worked. This complaint then attempted to state thirty-six causes of action. If it were proved that any person for whom claim was properly presented in the action in any one work week labored more hours than those for which he was compensated, that cause of action would be established without more.[8] This is the right accorded by the Act. It would be accorded irrespective of the language of the agreements. It could not be cut off by any stipulation of the agreements that the objection by the zanjero must be made within five days.

The trial court was led into error by the method of trial by the "complainant." It was decided that, if it were proved that each agreement was fair on its face and did not violate the basic logic of the Act and that the time credits bore a substantially accurate relationship to reality, basis was laid for a judgment for defendant. When, therefore, the trial court further found that payments were made to each of the persons involved in accordance with the time credits and the record prepared by the zanjero himself, the matter was concluded.

This reasoning is the basis for the finding to which criticism is directed. But each person whose claim was properly before the court was entitled to

8.   29 U.S.C.A. § 215(a) (2).

prove that he worked more hours in his employment in any specific work week than those for which he received compensation. The trial court could consider the record which he turned in to the Association, but that would not be necessary or in all events conclusive. The question in each instance would be one of fact.

■■■■ The objections to these findings must therefore be sustained on this ground. Although the full record is, here, this Court is not empowered to make findings. As to any work week in which any person properly involved has proven that he worked actual hours in the service of the Association, in excess of those for which he was paid, there should be a specific finding. This should set out the actual hours worked and the pay received and the pay found due. Obviously, if the guaranteed wage were paid and the zanjero worked less hours, no finding would be required. If the time credit was used as a basis for pay and he actually did the work in less time, no finding is necessary. Similarly, an aggregate of time credits which were paid for according to the agreement, where the zanjero worked on the whole less time, would require no consideration.

But, where the record shows no proof that in one work week or a series of work weeks a particular zanjero worked more hours than those for which he was paid, there should be a definite finding.

■■■ We must also consider the final exception herein. It was objected that the trial court concluded that plaintiffs are not entitled to liquidated damages. If the court find that any of the persons properly in this suit are entitled to recover for any hours for which they have not heretofore been paid, the court must also consider whether the failure to make the payment was in good faith and thereupon decide whether or not to award liquidated damages. This Court does not

attempt to pass upon any of these questions of fact.

Remanded for specific findings or retrial.

POPE, Circuit Judge (concurring specially).

I agree that the cause must be remanded with direction for further trial and findings. Judge Fee correctly states that "The matter was treated at the trial as if the issue were the validity of the agreements exclusively." The court then undertook to deal with what it conceived to be the issue before it by finding: "[T]he time credits agreed upon * * * bear a substantially accurate relationship to the actual time required by Plaintiffs to perform all the work required of them in that Plaintiffs were not required to work time in excess of said agreed credits to perform all the work required." I agree that the problem before the court cannot be dealt with by lumping off all the claims in that manner, for, as the opinion states, each person whose claim was properly before the court, was entitled to prove that he worked more hours in his employment in any specific work-week than those for which he received compensation. The soundness of that position, thus stated by Judge Fee, is demonstrated by what the Supreme Court said in Bay Ridge Co. v. Aaron, 334 U.S. 446, at page 473, 68 S.Ct. 1186, 1201, 92 L.Ed. 1502, as follows: "The defect in this argument, however the government's position is construed, is that it treats of the entire group of longshoremen instead of the individual workmen, respondents here."

The problem which confronts us has arisen from the fact that the collective bargaining agreement undertook to assign a specified number of minutes to certain stated tasks, and the agreement was that the "unit-time allowance" used in the contract should be the basis for computing the hours worked by each zanjero.[1] But as was held in the Bay Ridge

---

1. This was in Section 2 of Article XI which read as follows:

"Section 2. Due to the fact that the

zanjeros do not report to any of the offices of the Association for work and the time necessarily worked by them for the

case, supra, and as Judge Fee has stated, the Act requires each employee to be paid according to the actual hours worked by him. My understanding of the holding of the Bay Ridge case is that this statutory obligation cannot be modified by any sort of agreement.

The trial court did not try the case upon the theory which we are now holding was proper here, and hence the proof of the time actually worked by individual plaintiffs was very sketchy. But there is in the record evidence, which so far has not been controverted, that some of the zanjeros actually required and took more time than that listed in the unit-time allowances of the contract to perform the named tasks. Thus the plaintiff Sturdivant testified that he could not make any of the lateral or farm changes within the time periods mentioned in the contract and explained why in detail. This testimony seems to indicate that when Sturdivant was called to make a farm change (for which 15 minutes was allowed) he often had to make headgate adjustments at several points for several miles along the ditch which were required upon the mere turning of the extra head of water at one farm. For instance, when the additional water was added to the ditch from which several heads were presently flowing, the increased supply in the ditch necessitated readjustments of the gates all the way along the line. He testified that he was not paid for all the work done on his division.

The witness Archer, another zanjero, described at length the manner in which lateral or farm changes had to be made, how a typical operation of that kind was accomplished, and how a farm change for which 15 minutes was allowed might require the zanjero to work up and down the ditch for miles taking as much as 6 hours for such an operation.

While the plaintiffs offered to prove in each individual case the exact number of hours that the zanjero put in, the court declined to go into that question because, as stated before, the case was not being tried on that theory.

I differ in one respect with Judge Fee and that is that there is no basis in the record for the court's finding, quoted above, to the effect that the unit time allowances "bear a substantially accurate relationship to the actual time required." I think that finding cannot be made for the simple reason that the proof of the actual time expended was not taken. I have difficulty in understanding just what that finding means. To me it does not spell out just what this "relationship" is. My best guess as to what that finding says is that these stated units represent "average" time required to perform the duties specified. If that is what it means it seems plain to me that some of these plaintiffs are necessarily entitled to recover. The act does not provide standards for compensation for average employees. It provides that an employee must be compensated for actual

Association is to a certain degree within their control, it is hereby agreed by and between the parties hereto that the following unit-time allowance shall be used as a basis of computing the hours worked by each of the zanjeros:

"(1) For each lateral or farm change, including waiting time, if any, incident thereto—15 minutes.

"(2) For each card made out for continued or completed runs—2½ minutes.

"(3) For each run scheduled (including master buys)—3 minutes.

"(4) For each mile traveled on Association's business—2 minutes.

"(5) For making each lateral report—10 minutes.

"(6) For time worked by Relief zanjeros when not operating a division—Actual time as ordered.

"(7) For time spent under orders to stand by for emergencies or in the performance of other duties as ordered—Actual time.

"(8) For cleaning grates or making adjustments at forebays—Actual time.

"(9) For stand-by or waiting time, if any, and for all other duties not specifically mentioned above, such as telephone calls, attending to complaints, emergency calls, and the like, plus time consumed over and above that allowed in items 1, 2, 3, 4 and 5—14 hours per work week."

time expended. No employer is required by the act to hire any particular employee and if his employee is below average in requiring more time to do a stated job the employer need not keep him. But if the employer hires a stated employee he must pay at least the minimum wage for every hour worked by that employee and time and one-half for every hour worked over 40 hours. Thus if these units represent some sort of average it would appear that the below average employees had put in more time than they were paid for.

In general my view is that although the negotiated contract between the association and the union appears to be the result of a sincere effort to arrive at a reasonable solution of a most difficult problem, yet the general principles which underlay the decision of the court in the Bay Ridge case, supra, necessitate a retrial of this case for the purpose of arriving at the findings called for in Judge Fee's opinion.