**W. Willard WIRTZ, Secretary of Labor, Plaintiff,**

v.

**MELOS CONSTRUCTION CORP., a corporation and Americo Melo, Individually and as an officer of Melos Construction Corp., Defendants.**

**No. 66–C–981.**

United States District Court
E. D. New York.
May 8, 1968.

Charles Donahue, John A. Hughes, U. S. Dept. of Labor, New York City, for plaintiff, Samuel Gorin, New York City, of counsel.

Kimmell & Kimmell, Mineola, N. Y., for defendants, Leonard S. Kimmell, Mineola, N. Y., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

The Secretary of Labor seeks to enjoin defendants, the Melos Construction Corp. ("Melos") and its president, Americo Melo, from violating the overtime and recordkeeping provisions of the Fair Labor Standards Act. 29 U.S.C. §§ 207, 211. Defendants concede that they have not complied with the Act, but insist that it is inapplicable because Melos is not "an enterprise engaged in commerce" within the meaning of the statute. For the reasons stated below, the injunction will be granted.

Melos, a construction company with a yearly income of somewhat over half a million dollars, is engaged in constructing foundations for suburban homes. It does all its work on Long Island, New York. While its materials and supplies are obtained only from dealers located in New York, the dealers buy from out-of-state sources.

The principal item purchased by Melos is locally prepared ready-mix concrete—a mixture of cement, sand, gravel, and water. About fifty percent of the cement used—valued at approximately $35,000 a year—is manufactured outside New York. In addition, about $10,000 a year is spent for other supplies—primarily steel and lumber—which originate outside New York.

The question presented is whether the use of products worth about $45,000 a year which its suppliers purchase from outside the state brings Melos within the scope of the Fair Labor Standards Act. The answer turns on whether Melos' employees are "working on goods which have been moved in or produced for [interstate] commerce."

The overtime provision, contained in section 207(a) of title 29, is applicable to an "enterprise engaged in commerce." It states, insofar as relevant:

"(2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this Act by the Fair Labor Standards Amendments of 1966—

\* \* \* \* \* \*

for a workweek longer than forty hours \* \* \*

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Recordkeeping provisions apply to employers covered by section 207(a). 29 U.S.C. § 211(c).

An "enterprise engaged in commerce" is defined by section 203(s) to include one whose employees are "working on goods that have been moved in or produced for commerce." It reads, in part, as follows:

" 'Enterprise engaged in commerce or in the production of goods for commerce' means *an enterprise which has employees* engaged in commerce or in the production of goods for commerce, including employees *handling, selling, or otherwise working on goods that have been moved in or produced for commerce* by any person, and which—

\* \* \* \* \* \*

(3) is engaged in the business of construction or reconstruction, or both; \* \* \* " (Emphasis added.)

If the substantial quantities of cement, lumber and steel used by Melos were shipped to it directly by producers across state lines, there would be no doubt that its employees were "handling * * * goods that have been moved in * * * commerce" and that, therefore, they would be protected by the Act. See, e. g., Childress v. Whitley Enterprises, Inc., 57 Lab.Cas. ¶ 32,002 (4th Cir. 1968) (construction company). Cf. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942) (broad interpretation to include maintenance workers in loft building where goods for interstate commerce were manufactured, approved in Senate Report No. 145, 87th Cong., 1st Sess., U.S.Code Cong. and Admin.News, pp. 1620, 1662 (1961)). Interposition of a local dealer in a product's movement from a steel, lumber or cement mill to a housing site does not eliminate the interstate character of the transaction.

The Fair Labor Standards Act was designed to protect workers not to encourage use of middlemen. Administrative interpretation of the statute, precedent, and legislative history all point to the conclusion that the statutory obligation to pay overtime cannot be avoided whether out-of-state purchases are made directly from manufacturers or indirectly through local distributors.

The regulations promulgated by the Department of Labor construe the phrase "goods that have been moved in * * * commerce," broadly. The goods, they indicate, remain in interstate commerce throughout their journey from manufacturer to ultimate consumer:

"For the purpose of section 3(s) [29 U.S.C. § 203(s)], goods will be considered to 'have been moved * * * in commerce' when they have moved across State lines before they are handled, sold, or otherwise worked on by the employees. It is immaterial in such a case that the goods may have 'come to rest' within the meaning of the term 'in commerce' as interpreted in other respects, before they are han-

dled, sold, or otherwise worked on by the employees in the enterprise. Such movement in commerce may take place before they have reached the enterprise, or within the enterprise, such as from a warehouse of the enterprise located in another State. Thus, employees will be considered to be 'handling, selling, or otherwise working on goods that have been moved in * * * commerce' where they are engaged in the described activities on 'goods' that have moved across State lines at any time in the course of business, such as from the manufacturer to the distributor, or to the 'enterprise,' or from one establishment to another within the 'enterprise' ". 29 C.F.R. § 779.242.

The courts have construed similar statutory language in a like manner. In Katzenbach v. McClung, 379 U.S. 294, 296, 85 S.Ct. 377, 380, 13 L.Ed.2d 290 (1964), the Court, in determining whether a restauarant serves food which "has moved in commerce" for purposes of the Civil Rights Act, noted that meat had been bought "from a local supplier who had procured it from outside the State." See also Miller v. Amusement Enterprises, Inc., 394 F.2d 342, 351 (5th Cir. 1968) ("although the items sold in the concession stand are listed in the record as having been purchased from businesses within the State, the record does not show whether the products sold by Fun Fair actually originated in Louisiana").

Such an expansive interpretation is also supported by the legislative history of the 1961 amendments to the Act. The Senate Report states that the "same concept of coverage" is provided "for construction businesses as is provided in other categories of * * * coverage for other businesses." Senate Report No. 145, 87th Cong., 1st Sess., U.S.Code Cong. and Admin.News, pp. 1620, 1651 (1961). In discussing the basis for coverage for retail businesses, the Report makes it clear that a concern need not make direct interstate purchases for the Act to be applicable:

"It will be noted that the application of the test relating to purchases and

receipts of goods for resale, where such goods move or have moved across State lines, is not based on any interstate movement of such goods from the reselling establishment in its deliveries to customers. The interstate movement referred to is, rather, that movement by which such goods have been made available for sales of the reselling establishment, as where a retail enterprise located in one State purchases or receives goods for resale to its customers and these goods move or have moved in commerce from other States. * * *

The *exclusion of essentially local* retail *businesses* from the new coverage may be illustrated by the familiar types of enterprises *which engage in selling handicraft items* and similar goods *which are locally produced from local materials* and are sold in establishments in the towns and on the highways of the State where the goods are made." Id. at pp. 1663–1664 (emphasis added).

See also id. at p. 1622 ("The constitutional power of Congress under the commerce clause to exercise authority with respect to 'articles that have completed an interstate shipment and are being held for future sales in purely local or interstate commerce' is also settled").

These indicia of Congressional intent are reinforced by the Senate Committee's explicit approval of the then existing regulations construing "production of goods for commerce." Id. at 1662. These regulations, promulgated on May 17, 1950, reject the notion that an interstate journey is interrupted by the passing of title to a local dealer. They state:

"Whether the producer passes title to the goods to another within the State is immaterial. The goods are produced 'for' commerce in such a situation whether they are purchased f. o. b. the factory and are taken out of the State by the purchaser, or whether they are sold within the State to a wholesaler or retailer or manufacturer or processor who in turn sells them either in

the same form or after further processing, in interstate or foreign commerce." 29 C.F.R. § 776.21(d).

Cases relied upon by defendant as standing for a contrary conclusion are inapplicable. They are directed to the issue of whether individual employees, rather than the enterprise as a whole, are engaged in interstate commerce. See, e. g., Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Sucrs. De A. Mayol & Co., Inc. v. Mitchell, 280 F.2d 477 (1st Cir.), cert. denied 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed. 2d 195 (1960).

The ultimate consumer in the case of foundations for one-family homes is the purchaser who buys the house to live in, not the subcontractor who pours the foundations. Cement in liquid or powder form is useless to a homebuyer. For purposes of the Fair Labor Standards Act, cement does not complete its interstate journey until it hardens into almost immovable footings. Cf. Maryland v. Wirtz, 390 U.S. ——, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

The Secretary's request for an injunction is granted. The parties will submit a proposed order within twenty days.

So ordered.