ROBERT ELMER GLICK et al., Plaintiffs and Respond-
ents, v. The STATE OF MONTANA, Acting By and
Through the MONTANA DEPARTMENT OF INSTITU-
TIONS, Defendant and Appellant.

No. 11963.
Submitted March 10, 1971.
Decided April 9, 1971.
485 P.2d 42.

Robert L. Woodahl, Atty. Gen., Dolphy O. Pohlman, Asst. Atty. Gen., argued, Patrick J. Brophy, Asst. Atty. Gen., argued, Helena, for defendant and appellant.

Corette, Smith & Dean, Kendrick Smith argued, Butte, for plaintiffs and respondents.

MR. JUSTICE DALY delivered the Opinion of the Court.

This is an appeal from a summary judgment limited to one issue and entered for plaintiffs by the district court of the fifth judicial district, County of Madison, the Honorable Frank M. Davis presiding. The judgment holds that as a matter of law plaintiffs are entitled to the benefits and protection of the federal Fair Labor Standards Act of 1938, as amended, in plaintiffs' action against the state for overtime pay.

The State of Montana operates and maintains, as a part of its department of institutions, the Montana Children's Center at Twin Bridges, Montana. The employees who initiated this action are presently or were formerly employed at the Children's Center.

The amended complaint of the employees stated two causes of action: the first cause of action alleged liability upon contract; while the second cause alleged liability under the federal

Fair Labor Standards Act, 29 U.S.C.A. § 203, et seq. Thereafter, employees submitted interrogatories which were duly answered by the state.

Subsequently, employees moved the court to enter a summary judgment that each of the employees was covered by the Fair Labor Standards Act and that the state is liable under said act to each of the said employees for overtime pay which would thereafter be determined.

The court granted summary judgment which was specifically limited to the question as to whether or not the individual employees, as a matter of law, were entitled to the benefit and protection of the Fair Labor Standards Act of 1938, as amended, during the periods covered by the complaint. The defendant appeals from this judgment on two issues.

I. Whether the trial court erred in granting plaintiffs' motion of limited summary judgment on the ground that there are genuine issues as to material fact.

II. Whether, assuming, without admitting, that there was no genuine issue of material fact, the district court erred in granting the summary judgment as the respondent was not entitled to the judgment as a matter of law.

To fully understand the issues raised by the appeal it is necessary to review the federal act and its history. We find a summary set forth in Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), a case cited by both parties and agreed to be binding precedent.

"As originally enacted, the Fair Labor Standards Act of 1938 required every employer to pay each of his employees 'engaged in commerce or in the production of goods for commerce' a certain minimum hourly wage, and to pay at a higher rate for work in excess of a certain maximum number of hours per week. The Act defined the term 'employer' so as to exclude 'the United States or any State or political subdivision of a State * * *' This case involves the constitutionality of two sets of amendments to the original enactment.

"In 1961, Congress changed the basis of employee coverage:

instead of extending protection to employees individually connected to interstate commerce, the Act now covers all employees of any *'enterprise'* engaged in commerce or production for commerce, provided the enterprise also falls within certain listed categories. In 1966 Congress added to the list of categories the following:

" ' (4) *is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for the mentally or physically handicapped or gifted children, an elementary or secondary school, or an institution of higher education* (regardless of whether or not such hospital, institution or school is public or private or operated for profit or not for profit).' '' (Emphasis added.)

The effective date of the 1966 amendment was February 1, 1967.

The section as amended in 1966 under discussion here is Section 203(s) (4) and reads as follows:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which   *   *   *

" (4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, an elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)."

Turning again to the *Wirtz* case it clearly stated that Congress when acting within a delegated power under the Commerce Clause to adopt the *"enterprise concept" may extend the*

*F.L.S.A. to the States and the sovereign power of a state which operates a school can be diminished to the extent that the Constitution grants the power to the federal government.*

Of notable significance also in the *Wirtz* case is the recognition that if an enterprise is found to be covered by the Fair Labor Standards Act, all the employees of that enterprise are subject to the provisions of the act.

In the opinion and order of the district court granting the motion for summary judgment the court relied upon four factual determinations as grounds for issuing the order. These facts admitted by defendant in written interrogatories are as follows:

"1. That it operates a primary school at the Montana Children's Center, Twin Bridges, Montana.

"2. That materials, supplies and textbooks used in the school pass through interstate commerce.

"3. That it acknowledges as a binding precedent the 'enterprise' concept laid down by the United States Supreme Court in Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed2d 1020.

"4. That, at least since February 1, 1969, it has effected compliance with the purpose and intent of the federal act with respect to hours of work and wages for its employees, such as Plaintiffs, at the Children's Center, a fact which the Court would be remiss to ignore."

The court based its findings of fact on the state's answers to plaintiffs' interrogatories and the following admissions:

That each of the employees was employed at the Children's Center during some period between February 1, 1967, the effective date of the 1966 amendments, and February 1, 1969, the date upon which the state began to pay the employees on the basis of FLSA.

That employees were required to be on the job or on call 24 hours of each regular work day.

That none of the employees was paid any overtime prior to February 1, 1969.

The state's answers to the employees' interrogatories 27 and 29 through 33 relate to the issue of whether the school is an enterprise engaged in commerce and whether it operated an elementary and/or secondary school in which materials, supplies and textbooks which had passed in interstate commerce were used.

These interrogatories and state's answers to them read as follows:

"27. Does the defendant recognize that 8 hours a day and 40 hours a week constitute a regular day and regular work week for employees such as these plaintiffs?

Answer: Yes.

If so, when did defendant do so and explain why.

Answer: On or about February 1, 1969 it was mutually agreed between defendant and plaintiff that the terms of the employment contract would provide for an 8-hour regular work day and a 40-hour regular work week.

If so, at what rate of pay (regular or one and one-half) does defendant recognize payment should be made for overtime?

Answer: One and one-half."

"29. Has defendant ever recognized that it was bound by the Fair Labor Standards Act of 1938, as amended, in any of its relationships with any of its employees?

Answer: Yes.

If so, in relationship with what employees at what institutions, and explain why.

Answer: 1) The department of institutions has recognized that some employees employed at the following institutions are covered by the Act:

a. Boulder River School and Hospital
b. Warm Springs State Hospital
c. Pine Hills School
d. Mountain View School
e. Center for Aged
f. Eastmont—Handicapped Children

2)  It has been determined that these institutions are within the definitions set forth in the Act.

3)  The department of institutions has not at this time determined which employees employed at the institutions are bound by the Act.

"30.  Does defendant recognize Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020, as a binding decision or precedent?

Answer: Yes, as it applies to those enterprises defined in section 3 subsection R of the Fair Labor Standards Act of 1938, as amended in 1966.

"31.  Does the defendant recognize that for Montana Children's Center supplies are purchased which pass in interstate commerce?

Answer: Yes.

If so, are any of such supplies for the school?

Answer: Yes.

"32.  Does the defendant recognize that at Montana Children's Center it is operating one or more of the institutions or projects mentioned or described in 29 U.S.C.A. Secs. 203 as amended, 207 as amended and 216 as amended?

Answer: The defendant recognizes that the primary function of the Montana Children's Center is to operate as a custodial institution for dependent and neglected children. To carry out this primary function it is necessary that secondary functions such as some of the institutions or projects mentioned in the act are performed.  *   *   *

"33.  Does the defendant recognize that at Montana Children's Center it is operating an elementary and/or secondary school?

Answer: Yes.

If so, were materials, supplies and/or textbooks used in said school which had passed through interstate commerce?

Answer: Yes.

If not, why does the defendant refuse to recognize this fact?

Answer: ———————————"

The principal arguments advanced by the state are "While it is true that the appellant's answers to interrogatories admitted that certain supplies for the Montana Children's Center pass in interstate commerce, nowhere does the record of this case show that any persons in any way concern themselves with these supplies. * * * Nor can the fact that the Children's Center received goods which passed in interstate commerce be a showing that any person handled, sold or otherwise worked on goods that have been moved in or produced for commerce by any other person." Therefore, it is argued, this creates a genuine issue of fact to be resolved before it can be determined if any person performed the required acts so as to be covered by the act.

Secondarily the state argues that it is an ultimate consumer and the goods handled here are "intrastate activity" not having a "substantial" effect on interstate commerce. And in any event the Children's Center is not an *"enterprise"* within the contemplation of the act because it is primarily a *custodial institution* and Section 203(s) (4) of the act requires that it be *primarily* an elementary or secondary school.

These arguments have been presented earnestly and at length but they are not persuasive. We cannot accept the construction the state would impose on Section 3(s) (4) of the act by the application of the words *"primarily engaged"* to *"an elementary or secondary school."* Primarily engaged can only apply to the clause in which it appears. The best demonstration of the correct application is achieved by reading the section from the beginning "* * * and which (4) is engaged in the operation of a * * *" then applying each clause in its proper order to the introductory phrase will present no difficulty. The state's grammatical application becomes inconsistent when they admit that two primarily custodial institutions, Pine Hill School for delinquent boys and Mountain View School for delinquent girls, are covered by the act. Therefore the primary function of the state institutions will not control except in the

case of institutions for the care of the sick, aged, mentally ill or defective who reside on the premises, as specifically directed by the act.

The admission by the state to use in the Children's Center School of materials, supplies and textbooks which have passed in interstate commerce is clearly an admission that some employees handled these items.

In view of the above admitted facts, the state's position that the record fails to show that any employee of the Children's Center was engaged in commerce is contrary to the record. The suggestion that the activities of the Center must have a substantial effect on commerce and that there is an unconstitutional invasion of the state's sovereign power are both refuted by the decision in *Wirtz*.

In point on the question of the application of the 1966 amendments to state operated schools is Maryland v. Wirtz. The United States Supreme Court in the *Wirtz* case stated:

"The Court has said only that where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of the individual instances arising under that statute is of no consequence."

For the state to maintain that there is no showing of a substantial effect on interstate commerce is to ignore the state's citation of Jackson v. Airways Parking Company, D.C., 297 F.Supp. 1366, which held:

"However, the Act and the courts make no distinction as to the percentage, volume, or amount of activities of either the employee or employer which constitute engagement in commerce."

The rationale of ultimate consumer does not fit this fact situation. The theory applied to this type of commerce clause application is more clearly demonstrated in a federal district court case affirmed by the 2nd Circuit in Wirtz v. Melos Construction Corp., 284 F.Supp. 717 (1968); 408 F.2d 626.

"The regulations promulgated by the Department of Labor construe the phrase 'goods that have been moved in * * *

commerce,' broadly. The goods, they indicate, remain in interstate commerce throughout their journey from manufacturer to ultimate consumer:

" 'For the purpose of section 3(s) [29 U.S.C. ' 203(s)], goods will be considered to "have been moved * * * in commerce" when they have moved across State lines before they are handled, sold, or otherwise worked on by the employees. *It is immaterial in such a case that the goods may have "come to rest" within the meaning of the term "in commerce" as interpreted in other respects, before they are handled, sold, or otherwise worked on by the employees in the enterprise.* Such movement in commerce may take place before they have reached the enterprise, or within the enterprise, such as from a warehouse of the enterprise located in another State. Thus, employees will be considered to be "handling, selling, or otherwise working on goods that have been moved in * * * commerce" where they are engaged in the described activities on "goods" that have moved across State lines at anytime in the course of business, such as from the manufacturer to the distributor, or to the "enterprise," or from one establishment to another within the enterprise." ' 29 C.F.R. §779.242.'' (Emphasis added.)

By its own admission, the state has recognized that "Under the 'enterprise theory' as stated by the United States Supreme Court in Maryland v. Wirtz, *supra*, if two or more employees are found to be engaged in interstate commerce, this establishes an enterprise. If an enterprise is found to be covered by the Fair Labor Standards Act, all the employees of that enterprise are subject to the provisions of the act.''

In regard to the district court's finding of fact No. 4 the Court found that since February 1, 1969, the state has complied with the purpose and intent of the act with respect to hours of work and wages for its employees. The state dismisses this finding as to any admission on the part of the state as an "erroneous assumption with no logical basis.'' In light of the language in the holding of the 10th Circuit Court in Briggs v.

Sagers, 424 F.2d 130 (1970), it would appear that a state's continued operation and *"subsequent adherence to the substantive portions of the FLSA"* could waive its constitutional privileges of sovereign immunity without it being a knowing or intelligent waiver. This would furnish a logical basis for the court's consideration of the fact relied on in finding No. 4. The Court finding no genuine issue of material fact remaining and no misapplication of 29 U.S.C.A. Sec. 203(s) (4) the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, JOHN C. HARRISON, and CASTLES, concur.