**ROTHMAN v. PUBLICKER INDUSTRIES, Inc.**

No. 10808.

United States Court of Appeals
Third Circuit.

Argued Jan. 20, 1953.

Decided Feb. 6, 1953.

Ronald Souser, Philadelphia, Pa. (Souser & Schumacker, Philadelphia, Pa., on the brief), for appellant.

I. Herbert Rothenberg, Philadelphia, Pa., for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The appellee, Rothman, an employee of the appellant, Publicker Industries, Inc., having been denied pay for certain overtime work, sued his employer under the Fair Labor Standards Act of 1938, as amended,[1] and recovered the claimed overtime compensation and, as the statute authorizes, an equal amount as liquidated damages.

The first question on this appeal is whether within the meaning and for the purposes of the Act Rothman was in the exempt category of persons "employed in a bona fide executive * * * capacity".[2] This in turn, as the parties agree, is to be determined in the light of Regulations of the Administrator which state several definitive criteria all of which must be satisfied if an employee is to be re-garded as "employed in a bona fide executive capacity". Of the criteria thus set out in the Regulations the one in controversy here is the requirement that the employee "customarily and regularly exercises discretionary powers".[3] The District Court explicitly found that Rothman "did not customarily exercise discretionary powers and consequently fails to meet one of the tests necessary to place him in the exempt category". It is appellant's contention that the evidence does not support or permit that finding. We think, however, that the finding was clearly permissible and accordingly that the employee was entitled to overtime compensation.

Rothman was employed to work in the yards of the Bigler Street plant of Publicker Industries where alcohol and various by-products are produced in large quantities. The yard and plant cover an area about two city blocks long and one block wide. Within the yard some twenty-three railroad tracks enable the movement of railroad cars to and from various sections of the plant. There is testimony that during a single day thirty-five to forty railroad cars of grain, twenty to twenty-five cars of coal and additional cars containing other raw materials may be brought into the yard, while a hundred or more cars of alcohol and by-products are taken out.

Rothman's job was designated "Yard Master". His principal function was to receive instructions from various departments of the plant that particular cars should be moved to or from some loading or unload-

1. 52 Stat. 1060 (1938), as amended, 29 U. S.C.A. § 201 et seq.

2. Section 13 of the Act, 29 U.S.C.A. § 213, expressly exempts from wage and hour requirements "any employee employed in a bona fide executive, administrative, professional, or local retailing capacity * * *."

3. Regulations effective January 25, 1950 spelled out six essentials of an "executive", four of which are stated as follows:

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee—

"(a) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) who customarily and regularly directs the work of two or more other employees therein; and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) who customarily and regularly exercises discretionary powers." 29 C.F.R. § 541.100.

ing point and to transmit these instructions to the appropriate railway operating crew. In addition, he was responsible for such cleaning as tank cars might require after delivery to the yard in order to be ready for loading. In this connection, he normally had two to five employees, apparently laborers, working under his direction. However, about two-thirds of his time was spent in connection with his primary responsibility, moving around the yard, transmitting instructions concerning the placement and dispatch of railway cars and observing the execution of these instructions.

Before assignment to these duties, Rothman performed similar dispatching duties in connection with the desired movement of trucks to and from particular points in another Publicker yard. In the old job he was called "expediter" and received overtime pay as an ordinary employee. As yard master, however, he was said to be employed in executive capacity and thus not entitled to overtime pay. The claimed distinction seems to depend principally upon the addition of the new function of directing the work of other employees. Publicker places principal emphasis upon the exercise of discretionary powers involved in the direction and control of the small cleaning force.

We have examined all items of discretion pointed out by appellant in the light of Rothman's total work and think that the trier of fact was justified in concluding that in the aggregate they fall short of establishing "customary and regular exercise of discretionary powers" within the meaning of the Regulations. In the circumstances of this case we think that the District Court was right in minimizing the significance of those small discretionary powers which normally inhere in any direction of the labor of others. For in the Administrator's Regulations the executive function is described as involving as separate definitive characteristics both the direction of the work of two or more employees and the customary exercise of discretion. There would be no occasion to formulate and include both of these as distinct requirements if the requisite exercise of discretion need be no more than what normally characterizes the direction of work of others.

■ The second contention of appellant is that on the record the court should have absolved the defendant from the payment of liquidated damages beyond the earned compensation. The District Court made its position on this point explicit saying:

"The utmost that could be derived from the evidence in this respect is that the employer had the bona fide belief that the plaintiff was within the exempt class. It is well settled that 'reasonable cause' in the Portal-to-Portal Act means more than that. The Court has no option other than to add liquidated damages and counsel fees to the verdict."

This was correct. The controlling sentence of Section 11 of the Portal-to-Portal Act provides that:

"* * * if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages * * *." [4]

We understand this language to impose upon the delinquent employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict. On the present record the appellant did not even attempt to meet that burden. Certainly, in a case where an employer predicated a change in overtime compensation rights upon so small a change in job description as was the case here it was not incumbent upon the court to seek out some exculpatory rationalization of the employer's conduct.

The judgment of the District Court will be affirmed.

4. 61 Stat. 89 (1947), 29 U.S.C.A. § 260.