**Ray MARSHALL, Secretary of Labor United States Department of Labor, Appellee,**

v.

**Ruth A. BRUNNER, Executrix of the Estate of Robert Brunner, deceased, and Ruth A. Brunner, individually and as Successor to Robert Brunner, Appellant.**

**Ray MARSHALL, Secretary of Labor United States Department of Labor, Appellant,**

v.

**Ruth A. BRUNNER, Executrix of the Estate of Robert Brunner deceased, Ruth A. Brunner individually and Successor to Robert Brunner, Appellee.**

**Nos. 80–2700, 81–1040.**

United States Court of Appeals, Third Circuit.

Argued Nov. 13, 1981.

Decided Jan. 14, 1982.

Rehearing and Rehearing In Banc Denied Feb. 10, 1982.

---

T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Washington, D. C., Marshall H. Harris, Regional Sol., Philadelphia, Pa., Mary Ann Bernard (argued), Joseph Woodward, Attys., U. S. Dept. of Labor, Washington, D. C., for appellee in 80–2700, appellant in 81–1040.

Wendell G. Freeland (argued), Richard F. Kronz; Freeland & Kronz, Pittsburgh, Pa., for appellant in 80–2700, appellee in 81–1040.

Before SEITZ, Chief Judge, GARTH, Circuit Judge and CAHN,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The Secretary of Labor, in a complaint that charged Brunner[1] with violations of the Fair Labor Standards Act of 1938, sought an injunction against future violations of the Act, back pay for Brunner's employees, and the imposition of liquidated damages in an amount equal to the back pay. After a trial on the merits, the district court, 500 F.Supp. 116, entered judgment granting the Secretary's request for an injunction against future violations of the Act and for recovery of back wages totalling $112,437.05. The court declined to award any liquidated damages. Both Brunner and the Secretary appeal.

While these appeals present questions involving the coverage of Brunner's enterprise within the ambit of 29 U.S.C. § 203(s), the issue with which we are most concerned is whether the district court committed legal error when it concluded that an award of liquidated damages in favor of the Secretary was not justified.

We affirm all rulings of the district court, except its decision refusing to award liquidated damages.

## I.

Brunner was engaged in the business of collecting garbage, trash, and scrap metal from homes and a number of commercial enterprises in thirteen municipalities in Allegheny County. The Wage and Hour Division of the Department of Labor conducted an investigation of Brunner's business through January of 1977. The investigation uncovered evidence of extensive violations of the minimum wage, maximum hours, child labor, and record keeping provisions of the FLSA. During the investigation, officials of the Wage and Hour Division and Brunner's own counsel specifically warned Brunner about the importance of complying with the Act's record keeping requirements and its prohibitions against child labor. Despite this advice, the time cards which Brunner then began keeping were inaccurate and Brunner also employed other measures to conceal the lengthy hours that the employees actually worked. In addition, Brunner continued to employ minors in violation of the Act. (Fdgs. 23–28, A.234–36). On May 27, 1977 the Secretary filed this suit.

At trial, Brunner maintained that the Company was not required to comply with provisions of the FLSA because it was a local enterprise whose employees were not engaged in commerce, did not produce goods for commerce, and did not handle goods that had been moved in, or produced for, commerce. The district court rejected this argument, and concluded that the Company was subject to the FLSA and that it had violated the minimum wage, maximum hours, child labor, and record keeping provisions of the Act. From the evidence, the district court concluded that Brunner's employees worked an average of 56 hours during a five-day workweek and were not paid the applicable minimum wage or time-and-one half for hours worked in excess of forty hours per week.

As a consequence, the district court enjoined Brunner from violating the Act, and awarded $112,437.05 in back pay to the affected employees. The district court, however, refused to assess Brunner with liqui-

---

* Honorable Edward N. Cahn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. This action was brought by the Secretary of Labor against Brunner, individually and as the sole proprietor of the Brunner Sanitation Company. Ruth Brunner, who presently conducts the Brunner business and had been active in that business before her husband's death, was substituted as a defendant when Robert Brunner died pending trial. Prior to her husband's death, she had been in charge of all record keeping and bookkeeping and had authority to issue checks in the name of the Company. For ease in reference, throughout this opinion we shall refer to the Brunner Sanitation Company as either "Brunner" or the "Company."

dated damages in the same amount. These appeals [2] followed.

## II.

The coverage of the Fair Labor Standards Act extends to employees employed in "an enterprise engaged in commerce or in the production of goods for commerce." [3] Section 203(s) of the Act provides that such an enterprise is one

> which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or *materials* that have been moved in or produced for commerce by any person, ... [4] (emphasis added).

The parties' stipulations reveal that Brunner used "trucks, truck bodies, tires, batteries, and accessories, sixty-gallon containers, shovels, brooms, oil and gas" that had been manufactured out of state and had moved in interstate commerce. (App. at 21–22). The district court thus concluded that Brunner is subject to the Act, since its employees "handl[ed] ... goods or materials that have been moved or produced in commerce."

Brunner, however, argues that there is an exception provided in section 203(s) for firms that are the ultimate consumers of goods that have been moved or produced in commerce. Although Brunner concedes that Congress has the power to subject Brunner to FLSA coverage (Brief for Appellant, No. 80–2700, at 7), Brunner argues that Congress did not intend the Act to apply to a firm merely because the business uses motor vehicles, gas, oil and other manufactured goods in its operations.

**2.** Brunner's appeal at 80–2700 also asserts that in calculating back wages due its employees the district court committed certain evidentiary errors. We have carefully examined the record in light of Brunner's contentions. We are satisfied that the district court was correct in its evidentiary rulings and that Brunner was not prejudiced by the district court's computations.

The Secretary's appeal is docketed at 81–1040.

**3.** 29 U.S.C. § 206 (minimum wage); *Id.* at 207(a)(2) (maximum hours); *Id.* at § 212(c)

The "ultimate consumer" exception is found in section 203(i) of the Act, which provides in relevant part "Goods means goods ... commodities, merchandise, or articles or subjects of commerce of any character, ... but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof ...." Thus, section 203(i) excludes from the definition of goods those goods that have been delivered into the physical possession of an ultimate consumer for its own use. Brunner's "ultimate consumer" argument proceeds on the assumption that if Brunner's employees only use products which the Company itself consumes, then Brunner's employees have not handled "goods" that have been moved or produced in commerce within the meaning of section 203(s). Brunner further asserts that the phrase "or materials" added by Congress in the 1974 amendment did not affect the "ultimate consumer" exception.

Just as the district court rejected this argument, so do we. When the 1974 amendment to section 203(s) added the words "or materials" to that statute, it clarified the meaning of the Act with respect to those businesses, which in the course of their own operations, use materials which have been moved in or produced for commerce. Indeed, the Senate report fully explains the purpose of the amendment:

> The bill also adds the words "or materials" after the word "goods" to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, *e.g.*, the soap used by a laundry * * *.

(oppressive child labor). The record keeping requirements apply to any employer covered under any other provision of the Act. *See* 29 U.S.C. § 211(c).

**4.** Before an enterprise is subject to the Act, it also must have an annual gross volume of sales not less than $250,000. *See* 29 U.S.C. § 203(s)(2). Brunner has conceded that its business exceeds $250,000 per year. (Stipulation Nos. 5, 6. App. at 22).

Although a few district courts have erroneously construed the "handling" clause as being inapplicable to employees who handle goods used in their employer's own commercial operations, the only court of appeals to decide this question and the majority of the district courts have held otherwise and the addition of the words "and materials" will clarify this point. (citations omitted).

S.Rep. No. 93–690, 93d Cong., 2d Sess. 17 (1974).[5]

We are satisfied that the legislative history demonstrates that Congress intended to extend the coverage of the Act to firms, like Brunner's which use materials that have been moved in or produced in, commerce. Indeed, Brunner has cited to no authority that would justify a different interpretation of the 1974 amendment. *Dunlop v. Industrial America Corp.*, 516 F.2d 498 (5th Cir. 1975) cited by Brunner, while admittedly holding that a business similar to Brunner's is within the ultimate consumer exception, nevertheless does not support Brunner's contention. *Dunlop* was decided on the basis of the Act as it appeared *prior* to the 1974 amendments. As the court in *Dunlop* stated:

But that amendment is prospective only, and Congress' failure to make clear its intentions in 1961 and 1966, if such they

were, do not enable us to achieve what Congress itself did not do until 1974. We therefore hold that prior to its amendment in 1974 the Fair Labor Standards Act did not reach enterprises which provided only services to its customers and did not pass on any goods obtained from interstate commerce. (footnote omitted).

516 F.2d at 502.

In explaining the effect of the 1974 amendment, *Dunlop* referred, as we have, to the Senate Report, stating:

This latest amendment leaves the definition of goods intact but circumvents it by a broader definition of "enterprise engaged in commerce." The new definition includes enterprises with "employees handling, selling, or otherwise working on goods *or materials* that have been moved in ... commerce ..." *See* S.Rept. 93–690, 93d Cong., 2d Sess., p. 17 (1974). (emphasis in original).

*Id.* at 502 n.8.

We thus conclude that Brunner is subject to the provisions of the FLSA.[6]

III.

■ Section 216(b) of the Fair Labor Standards Act provides that any employer who violates the minimum wage or maximum hour provisions of the Act, "shall be liable to the employee or employees affect-

---

**5.** Brunner asserts that the Senate Report is not an authoritative source of legislative history, because Brunner claims it was the House bill which Congress ultimately enacted. In fact, the 1974 amendment represented a compromise between Senate and House bills. See S.Rep. No. 93–758, 93d Cong., 2d Sess. (1974) (Senate Conference report). The amendment adding the phrase "or materials" to 29 U.S.C. § 203(s), however, originated in the Senate, see S.2747, 93rd Cong., 2d Sess. 12, introduced Nov. 27, 1973, at 119 Cong.Rec. 38077, and the Senate Report thus provides an authoritative guide to the amendment's meaning. The House Bill contained an identical provision amending Section 3(s), but the House Report does not discuss the purpose of the amendment.

**6.** As an alternative basis for holding Brunner subject to the FLSA, the district court concluded that the Company was engaged in the production of goods for commerce within the meaning of Section 203(s). Brunner had stipu-

lated that its employees collect, sort, load and transport scrap metal during the regular course of the Company's business. The scrap is then sold to dealers, who in turn sell it to steel fabricators for the manufacture of steel products which are shipped in interstate commerce. (App. at 85–90). Having held that Brunner's Company is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s), we do not reach or decide this alternative ground of FLSA coverage. We note in passing, however, a case which presents facts similar to those at issue here, *Wirtz v. F. M. Sloan, Inc.*, 411 F.2d 56 (3d Cir. 1969). In *Wirtz* this court held that a small local producer of natural gas which sold all of its gas to a Pennsylvania gas distribution company was subject to the FLSA, since the gas distribution company sold a large percentage of its gas to steel manufacturers which in turn used the gas in producing goods for interstate commerce. *Id.* at 58–59.

ed in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages."* 29 U.S.C. § 216(b) (emphasis added). Under the Act, liquidated damages are compensatory, not punitive in nature. Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due. *Overnight Motor Co. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222, 86 L.Ed. 1682 (1942).

■ In 1947, upon the enactment of section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, Congress provided employers with a defense to the mandatory liquidated damage provision of section 216(b). Essentially, the defense provides that the district court has discretion to award no liquidated damages, or to award an amount of liquidated damages less than the amount provided by section 216(b) of the FLSA, *if, and only if*, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.[7] Thus, before the district court's discretion may be invoked, the employer has the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Rothman v. Publicker Industries*, 201 F.2d 618, 620 (3d Cir. 1953). In the absence of such a showing, the district court has no discretion to mitigate an employer's statutory liability for liquidated damages. *See Rothman, supra; McClanahan v. Mathews*, 440 F.2d 320, 322, (6th Cir. 1971); *Richard v. Marriott Corp.*, 549 F.2d 303,

305–06 (4th Cir.), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 465 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

■ The good faith requirement of the Portal-to-Portal defense requires that the employer have an honest intention to ascertain and follow the dictates of the Act. *Laffey, supra*, 567 F.2d at 464. The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior. *Id.* Moreover, an employer may not rely on ignorance alone in meeting the objective test. *Barcellona v. Tiffany English Pub*, 597 F.2d 464, 468–69 (5th Cir. 1979).

■ Here the district court explained its refusal to award liquidated damages by "the factual circumstances surrounding the quantity and quality of the plaintiff's proof in this case."[8] In its opinion the district court also stated "that the defendant has sustained its burden of proving that liquidated damages should not be awarded." (App. at 242).

At no time, however, did the district court make the findings that were a prerequisite to the invocation of its discretion—that Brunner had acted in good faith and that there were reasonable grounds for believing that the Brunner business was in compliance with the Act. Furthermore, the district court's conclusion that Brunner had met its statutory burden is contradicted by the court's own findings of fact which establish conclusively that Brunner had acted

**7.** 29 U.S.C. § 260 provides in relevant part: In any action ... to recover ... liquidated damages, under the [Act], *if* the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under sections 206 or 207] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court *may*, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the

amount specified in section 216 of this title. (emphasis added).

**8.** This basis for the district court's exercise of its discretion obviously cannot satisfy the prerequisites of Section 260. The quantum and quality of proof offered by the Secretary is not relevant to the determination of whether Brunner acted in good faith and with a reasonable belief that the Company was not violating the FLSA.

in bad faith and had knowingly made deliberate attempts to circumvent the Act. The district court's findings may be summarized as follows:

(1) Brunner knew that its employees worked more than forty hours per week, but did not pay any of its employees time-and-one-half their regular rate of pay for hours over forty, as the Act requires. (Fdgs. 21, 28, App. at 234, 236).

(2) Prior to the Secretary's investigation Brunner kept no records of the hours worked by any employees. (Fdg. 22, App. at 234).

(3) Following an investigation by the Wage and Hour Division, Brunner began to keep a series of inaccurate time cards which failed to reflect the actual hours worked by the employees, even though Brunner had been explicitly advised by Wage and Hour officials, as well as its own counsel, of the importance of complying with the record keeping requirements of the Act. (Fdg. 23, 24, App. at 234, 235).

(4) Employees were instructed that if they did not sign the inaccurate time cards, they would not be paid. (Fdg. 23, App. at 235).

(5) Brunner continued to employ minors in the operation of its business even after Department of Labor officials, and its own counsel, advised Brunner that the Act prohibited that practice. (Fdg. 26, A. 235).

(6) During and after the investigation by the Wage and Hour Division, Brunner instructed employees not to talk to the Secretary's representatives and threatened to discharge the employees if they did. (Fdg. 27, A. 235).

(7) Finally, three weeks prior to trial, Brunner instructed all of his employees to sign statements that they had never worked more than forty hours per week, even though Brunner knew the employees regularly worked longer hours than that.

Not only are these affirmative findings fully supported by the record, but the record discloses no evidence whatsoever upon which a finding of "good faith" or a finding of "reasonable grounds" could have been made. Indeed, based on this record, any such findings, if made, would necessarily have had to be overturned on review. It is thus apparent that the district court erred in holding that Brunner had "sustained its burden of proving that liquidated damages should not be awarded."

Counsel for Brunner, recognizing the absence of any evidence in the record which could call into play the exercise of the district court's discretion to deny liquidated damages, argues that we should remand this issue to the district court so that proof may now be provided of Brunner's "good faith" and of reasonable grounds for believing that Brunner did not violate the Act. However, the Secretary's complaint, as well as the record, disclose that the Secretary at all times had sought the imposition of liquidated damages. Indeed, at oral argument Brunner's counsel conceded that the Secretary had put liquidated damages in issue throughout the proceedings below. Brunner, however, did not respond to this claim by producing the proofs necessary under Section 260. Moreover, the very findings of fact made by the district court demonstrate convincingly that Brunner acted in bad faith and had deliberately sought to circumvent the provisions of the FLSA. On the basis of such findings and this record no remand is indicated.[9] Thus, the Secretary is entitled to recover on behalf of the employees the full amount of liquidated damages under section 216(b), or $112,437.05.

### IV.

Having concluded that the district court did not err in holding that Brunner came

---

9. We note that other courts of appeal have not hesitated to reverse district court judgments that have denied liquidated damages. When the record in the district court failed to demonstrate the employer's good faith and reasonable grounds for its conduct, those courts, as we do here, remanded the issue to the district court with instructions to enter an award of the full statutory amount. *Barcellona v. Tiffany English Pub, supra,* 597 F.2d at 468–69; *King v. Bd. of Educ. City of Chicago,* 435 F.2d 295, 296–98 (7th Cir. 1970), *cert. denied,* 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649 (1971).

within the coverage of 29 U.S.C. § 203(s), we will affirm so much of the district court's judgment which is the subject of Brunner's appeal at 80–2700.

Because we have also concluded that the district court erred in refusing to assess liquidated damages as mandated by 29 U.S.C. § 216(b), we will reverse so much of the district court's judgment as is the subject of the Secretary's appeal at 81–1040, and we will remand to the district court with the direction that it enter judgment against Brunner for liquidated damages in an amount equal to the back pay judgment which we have affirmed.