· **Stephen R. SMITH, Jr., Plaintiff and Appellant,**

v.

**Dorothy K. BATCHELOR, Larry Peterman, and Janae Kingston, dba Movie Buffs, Defendants and Appellees.**

No. 930370.

Supreme Court of Utah.

July 15, 1994.

---

Stephen R. Smith, Jr., pro se.

Jerold D. McPhee, Salt Lake City, for plaintiff.

John T. Caine, Ogden, for defendants.

HOWE, Justice:

This case is before us for the second time. The facts are described in detail in *Smith v. Batchelor,* 832 P.2d 467 (Utah 1992) ("*Smith I*"). They are not in dispute because defendants Dorothy K. Batchelor, Larry Peterman, and Janae Kingston, doing business as Movie Buffs, failed to respond to plaintiff Stephen R. Smith's requests for admission, "thereby admitting the facts as Smith had described them." *Id.* at 468. We restate only those facts pertinent to the disposition of the issues now before us.

In March 1989, Movie Buffs hired Smith to perform computer work and to provide occasional in-house legal services for the business. There is some evidence that Smith was a salaried employee paid $2000 per month. However, by failing to file a timely response to Smith's requests for admission, Movie Buffs admitted that Smith drew a wage of $11.65 per hour. In August 1989, Smith left Movie Buffs, having worked 790.2 hours. He was not compensated for 210.2 of those hours, 188.15 of which represented overtime work. He brought suit, charging that Movie Buffs had violated the federal Fair Labor Standards Act (the "FLSA") and the Utah Payment of Wages Act (the "UPWA") by failing to pay him $3544.80 in back wages and overtime.

Smith moved for summary judgment on both claims. The trial court granted the motion as to his UPWA claim but denied his FLSA claim, reasoning that "equity prohibits both state and federal recovery for the same violation." *Id.* at 471. We affirmed the trial court's decision in part but held that the FLSA did not preempt the UPWA and therefore Smith's recovery of back pay under state law "pose[d] no bar to his recovery of *penalties* for violations of both the state and federal statutes." *Id.* at 470 n. 3, 471–73.

On the facts presented to us, we were uncertain whether Smith was an executive, administrative, or professional employee and thus exempt from the provisions of the FLSA. Citing 29 C.F.R. § 541.5c, we specifically noted, "Computer workers are considered professionals exempt from the FLSA only if they command a salary higher than six and one-half times the minimum wage, a sum that exceeds Smith's $11.65 per hour." *Smith I,* 832 P.2d at 473. Still, we remanded the case to the trial court to determine whether he was exempt on other grounds. Specifically, we held that Smith's exempt status depended on two issues: (1) "whether his legal training infected his employment and made him a professional," and (2) "whether the parties envisioned Smith's serving Movie Buffs in an executive or administrative capacity as supervisor of a staff of computer workers." *Id.*

After trial on these two questions, the court found that "five percent (5%) of plaintiff's time was spent working for defendants in a professional capacity as an attorney" but that his "legal work and training did not infect his employment sufficiently to make him either an executive or a professional exempt employee." The court further found that "twenty percent (20%) of plaintiff's time was spent administering defendants' computer systems, and seventy-five percent (75%) of [his] time was spent as a computer technician repairing, maintaining, and operating defendants' computers." The court held that Smith's "computer-related activities" made him an exempt administrative employee under the five-part test established by this

court in *Jacketta v. Utah Sand & Gravel Products Corp.,* 522 P.2d 702 (Utah 1974). It found:

(A) Plaintiff's work as a computer technician was non-manual labor directly related to management policies or general business operations of the employer; and

(B) involved the regular and customary exercise of discretion and independent judgment; and

(C) was work requiring specialized or technical training, experience or knowledge performed only under general supervision; and

(D) that Plaintiff did not devote more than 40% of his time to activities not directly and closely related to the performance of the work set out above; and

(E) that Plaintiff received more than $155.00 per week.

Accordingly, the trial court concluded that Smith was "not entitled to the benefits of ... [the FLSA], nor is he entitled to any attorney's fees for the bringing of this action."

Smith moved to open, alter, or amend judgment, arguing that under *Smith I* and 29 C.F.R. § 541.5c, he could not be exempt from the FLSA because he did not make six and one-half times the minimum wage. In denying this motion, the trial court explained:

[T]he plaintiff was not a professional computer worker or an executive, but clearly met the test as an exempt administrative worker pursuant to the criteria established in [*Jacketta*]. The Supreme Court ruling does establish the proper criteria for being an exempt *"professional"* computer worker, but did not establish the standards for an *exempt* "administrative worker". This Court's findings after a trial and based upon the plaintiff's own testimony in this case was that he was an exempt administrative worker.

█ Smith again appeals, arguing that under 29 C.F.R. § 541.5c, "[a] computer worker cannot be subject to analysis as a potentially

exempt executive, administrative or professional employee if his wages are below 6.5 times the minimum wage." In other words, the trial court should never have reached the administrative-exemption analysis in *Jacketta* because Smith did not make the threshold wage.

After careful consideration, we conclude that neither Congress nor the Secretary of Labor intended so broad an application of the wage threshold articulated in section 541.5c. In November 1990, Congress enacted Public Law 101–583, section 2 of which provides:

Not later than 90 days after the date of enactment of this Act, the Secretary of Labor shall promulgate regulations that permit computer systems analysts, computer programmers, software engineers, and other similarly skilled *professional workers* as defined in such regulations to qualify as exempt executive, administrative, or professional employees under section 13(a)(1) of the Fair Labor Standards Act of 1938 (29 U.S.C. 213(a)(1)). Such regulations shall provide that if such employees are paid on an hourly basis they shall be exempt only if their hourly rate of pay is at least 6½ times greater than the applicable minimum wage rate under section 6 of such Act (29 U.S.C. 206).

Act of Nov. 15, 1990, Pub.L. No. 101–583, § 2, 104 Stat. 2871 (emphasis added). Pursuant to this provision, the Secretary of Labor published 29 C.F.R. § 541.5c in the Federal Register on February 27, 1991. 56 Fed. Reg. 8250 (1991). It read:

§ 541.5c **Special provision for employees in computer systems analysis and programing work.**

(a) Pursuant to section 13(a)(1) of the Act and Public Law 101–583, the requirements of section 6 [minimum wage] (except section 6(d)) and 7 [overtime compensation] of the [Fair Labor Standards] Act shall not apply to computer systems analysts, computer programers, software engineers, and other similarly skilled employees who meet the requirements of para-

graph (c)[1] below and who are paid a regular rate of pay that exceeds 6½ times the minimum wage provided by subsections 6(a)(1) of the Act as specified in paragraph (b)[2] below.

29 C.F.R. § 541.5c (1992).

Commenting on the effect of section 541.5c, the Secretary of Labor wrote:

> This rule added a new § 541.5c to 29 CFR part 541 to exempt workers in the computer field who met the new duties tests specified in the regulations and whose regular rate of pay, regardless of whether paid on a salary basis or on an hourly basis was in excess of 6½ times the FLSA minimum wage. The interim final rule did not alter the exemption criteria for salaried workers in computer-related occupations who earn an amount equal to or less than 6½ times the minimum wage. Such workers continued to be eligible for exemption if the existing requirements of 29 CFR part 541 (i.e., duties and responsibilities) were met, typically in either an executive or administrative capacity. However, such salaried workers were not exempt by virtue of their employment in the specified computer related occupations.

57 Fed.Reg. 46742 (1992). In other words, even after section 541.5c was promulgated, computer workers who made less than six and one-half times the minimum wage and who met other prerequisite criteria were still eligible for exempt status as executive, administrative, or professional employees. *See*

1. Paragraph (c) reads:
   (c) Employees who qualify for this exemption are highly skilled in computer systems analysis or programing; and because of the wide variety of job titles applied to such work, job titles alone are insufficient to make this determination. To qualify for exemption, the employees [sic] primary duties must consist of one or more of the following:
   (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware and software functional specifications,
   (2) The design of computer systems based on and related to user specifications,
   (3) The creation or modification of computer programs based on and related to system design specifications,

29 C.F.R. §§ 541.1–.3 (1993). Therefore, we were correct in originally remanding this case to the trial court to determine whether Smith's "legal training infected his employment and made him a professional" and whether he acted in an "executive or administrative capacity as supervisor of a staff of computer workers." *Smith I*, 832 P.2d at 473.

■ Subsequent changes in the regulations, while not controlling in this case, support this narrow application of section 541.5c. After a comment period, that section was eliminated from title 29. Both the language and legislative history of Public Law 101–583 characterized computer analysts, programmers, and software engineers as professional workers. Act of Nov. 15, 1990, Pub.L. No. 101–583, § 2, 104 Stat. 2871 (computer analysts, programmers, and software engineers are "skilled *professional* workers" (emphasis added)); *see* 136 Cong.Rec. H10563–65. For this reason, the Secretary replaced section 541.5c with "new exemption criteria in § 541.3 [the professional exemption] to permit the specified computer-related occupations to qualify for exemption as *professional* employees." 57 Fed.Reg. 46743 (1992). The professional exemption now reads in part:

> The term *employee employed in a bona fide ... professional capacity* in section 13(a)(1) of the Act shall mean any employee:
>
> (a) Whose primary duty consists of the performance of:
>
> (4) The creation or modification of computer programs related to machine operating systems, or
> (5) A combination of the aforementioned duties, the performance of which requires the same level of skills.

2. Paragraph (b) reads:
   (b) Whether or not an employee's regular rate of pay exceeds 6½ times the applicable minimum wage rate shall be determined by dividing the amount of compensation earned in the workweek by the number of hours worked in the workweek in accordance with 29 CFR part 778.

...;

(4) Work that requires theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering, and who is employed and engaged in these activities as a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker in the computer software field, as provided in § 541.303.

29 C.F.R. § 541.3(a) (1993). This new regulatory scheme makes it clear that being a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker is only one way to acquire exempt professional status under the FLSA. Such workers may be exempt professionals for other reasons. *See* 29 C.F.R. § 541.3 (1993). They may also be exempt executive or administrative employees. *See* 29 C.F.R. 541.1–.2 (1993).

As earlier explained, the trial court determined that Smith was an administrative worker by applying the five-part analysis we adopted in *Jacketta,* 522 P.2d at 703. That analysis is inconsistent with the federal regulations in one critical respect. Under the regulations, an employee must be "compensated for his services on a *salary or fee basis* at a rate of not less than $155 per week" to qualify as an exempt administrative worker. 29 C.F.R. § 541.2(e)(1) (1993) (emphasis added). *Jacketta,* on the other hand, held that in determining whether an employee is an exempt administrative worker, courts must "find that the employee ... *[r]eceives* not less than $125.00 per week." [3] 522 P.2d at 703 (emphasis added). Under *Jacketta,* the method of payment is irrelevant. Thus, our case law articulates a broader administrative exemption than that articulated in the federal regulations because a worker need not be compensated "on a salary or fee basis" to qualify.

We conclude that the regulations delineating the requirements of the administrative

exemption should control. Nothing in *Jacketta* indicates that we specifically intended to adopt exemption criteria different from that articulated in the federal regulations. In fact, in all other material respects, the *Jacketta* analysis mirrored the regulatory criteria existing at that time. *See* 29 C.F.R. § 541.-2(a) (1973). We attribute our disregarding the "salary or fee basis" element to oversight, since the employees in *Jacketta* "[c]ertainly ... received a *salary* greater than $125.00 per week." 522 P.2d at 703 (emphasis added).

Moreover, we are inclined to give great deference to the administrator's interpretation of the FLSA. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) ("[R]ulings, interpretations and opinions of the Administrator under this Act [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). This is particularly true when we are called upon to decide the exempt status of an employee. As a general rule, "exemptions from the [Fair Labor Standards] Act should be strictly construed against the employer, and should be limited to those situations that plainly and unmistakably come within the terms and spirit of the exemption provision." Wesley Kobylack, Annotation, *Professional Capacity Exemption,* 77 A.L.R.Fed. 681, 691 (1986). More important, the FLSA specifically provides that the terms "executive, administrative, and professional capacity" shall be "defined and *delimited* ... by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1) (emphasis added). As the Tenth Circuit has held, the term "bona fide administrative capacity" as used in the FLSA is "defined by regulations which fix absolute criteria determinative of the question of exemption." *Legg v. Rock Prods. Mfg. Corp.,* 309 F.2d 172, 174 (10th Cir.1962).

---

**3.** The trial court increased the weekly-rate-of-pay requirement adopted in *Jacketta* from $125 per week to the $155 rate currently prescribed in section 541.2(e)(1) of the Code of Federal Regu-

lations. This alteration was the first step toward making *Jacketta* compatible with the federal regulations.

■ Having harmonized our case law with the federal regulations, we conclude that Smith was not an exempt administrative worker because he was not compensated on "a salary or fee basis." 29 C.F.R. § 541.-2(e)(1) (1993). By failing to timely respond to Smith's requests for admission, Movie Buffs admitted that he "drew [an hourly wage] of $11.65 an hour." *Smith I*, 832 P.2d at 469. We must accept this admission as an "undisputed fact" even though it "contradict[s] other evidence in the record." *Id.* at 468 (citing *Mud Control Labs v. Covey*, 2 Utah 2d 85, 90, 269 P.2d 854, 857–58 (1954)).

■ This conclusion, however, does not automatically entitle Smith to liquidated damages. Section 216 of the FLSA provides in part:

> Any employer who violates the provisions of section 206 or 207 of this title [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). Standing alone, this provision requires courts to award liquidated damages as a matter of right. However, section 216 must be read in conjunction with section 260 of the Portal-to-Portal Act,[4] which provides:

> In any action ... to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938, as amended ... if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a

violation of the Fair Labor Standards Act of 1938, ... *the court may, in its sound discretion, award no liquidated damages or award any amount thereof* not to exceed the amount specified in section 216 of this title [29 U.S.C. § 216].

29 U.S.C. § 260 (emphasis added).[5]

■ To prove this defense, Movie Buffs bears the " 'plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose ... more than a compensatory verdict.' " *Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984) (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)); *see* Romualdo P. Eclavea, Annotation, *Liquidated Damages for Violation of Wage And Hour Provisions of Fair Labor Standards Act*, 26 A.L.R.Fed. 607, § 4 (1976 & Supp.1993). If Movie Buffs carries this burden, "the court is permitted, but not required, in its sound discretion to reduce or eliminate the liquidated damages which would otherwise be required." 29 C.F.R. § 790.22(b) (1993); *see* 29 U.S.C. § 260. Otherwise, "the court is given no discretion by the statute, and it continues to be the duty of the court to award liquidated damages." 29 C.F.R. § 790.22(b) (1993); *see* 29 U.S.C. § 216(b).

■ The "good faith" requirement under section 260 is a subjective one, requiring the employer to " 'have an honest intention to ascertain and follow the dictates of the Act.' " *Williams*, 747 F.2d at 129 (quoting *Brunner*, 668 F.2d at 753); *see also McKee v. Bi–State Dev. Agency*, 801 F.2d 1014, 1020 (8th Cir. 1986). One reason Movie Buffs hired Smith was that he was an attorney. Therefore,

---

**4.** The Portal-to-Portal Act, 29 U.S.C. §§ 251–62 (1992), "contemplates that employers will be relieved, in certain circumstances, from liabilities or punishments to which they might otherwise be subject under the Fair Labor Standards Act." 29 C.F.R. § 790.2(a) (1993).

**5.** Movie Buffs did not waive this defense to liquidated damages when it failed to specifically plead it in its answer. *But see generally* Utah

R.Civ.P. 12(h). Other "good faith" defenses to FLSA liability require the employer to "plead and prove" them. 29 U.S.C. §§ 258, 259. However, the "plead and prove" language of sections 258 and 259 is noticeably absent from the good faith defense in section 260, which simply requires that an employer "show to the satisfaction of the court" good faith and reasonable grounds.

Smith's representations as to his exempt or nonexempt status may be relevant to Movie Buffs' "good faith" intent to ascertain the requirements of the FLSA.

As earlier explained, the "reasonable grounds" standard in section 260 requires an employer to demonstrate that his or her failure to comply with the FLSA was "predicated upon such reasonable grounds that it would be unfair" to impose liquidated damages. *Williams,* 747 F.2d at 129. This objective inquiry must turn on what Movie Buffs *in fact* knew concerning the terms and conditions of Smith's employment. Therefore, Movie Buffs may present evidence which contradicts the facts it admitted by failing to respond to Smith's requests for admission. The employment agreement between the parties as well as their subsequent conduct are relevant to this question.

 Finally, depending on whether the court awards liquidated damages, Smith may or may not be entitled to attorney fees and costs. Admittedly, the good faith defense in section 260 applies only to liquidated damages, not to attorney fees. *Luther v. Z. Wilson Inc.,* 528 F.Supp. 1166, 1176 (S.D.Ohio 1981). However, in this case we specifically held that Smith's recovery under the FLSA would be limited to penalties under the FLSA because "[o]nce the trial court awarded [him] his back wages, including overtime, under the UPWA, his wages were no longer 'unpaid' ... thereby obviating Smith's claim for unpaid wages under the FLSA." *Smith I,* 832 P.2d at 470 n. 3. Section 216 of the FLSA, provides that the court "shall, *in addition to any judgment awarded to the plaintiff,* or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). If Smith is not awarded any liquidated damages, then he has not been awarded a "judgment" under the FLSA and is not entitled to attorney fees and costs.

Because we have disposed of the case on these grounds, we need not address Smith's other contentions, including his multifarious claims of procedural error. We remand the case to the trial court for disposition consistent with this opinion.

ZIMMERMAN, C.J., STEWART, A.C.J., DURHAM, and RUSSON, JJ., concur.