**Albert J. BROOKS, on behalf of himself and others similarly situated, Plaintiffs,**

v.

**VILLAGE OF RIDGEFIELD PARK, NEW JERSEY; and Ridgefield Park Police Department, Defendants.**

No. 96–1079 (WHW).

United States District Court,
D. New Jersey.

Sept. 15, 1997.

Lisa A. Frey, Metuchen, NJ, Alan S. Kaufman, Chamberlain & Kaufman, Albany, NY, for Plaintiffs.

David Wayne Garland, Grotta, Glassman & Hoffman, P.A., Roseland, NJ, for Defendants.

## OPINION

WALLS, District Judge.

Plaintiffs have brought this suit against defendants Village of Ridgefield Park and the Village of Ridgefield Park Police Department (collectively the "Village") alleging that defendants failed to make prompt overtime payments in violation of the Fair Labor and Standards Act, 29 U.S.C. § 201 *et seq.* (the" FLSA"). Defendants move pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 12N for summary judgment. Plaintiffs cross-move for summary judgment on their behalf. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court determines that these motions may be decided without oral argument by counsel. The Court finds that the payment schedule employed by the Village violated the FLSA but declines at this time to award liquidated damages because there exists a genuine issue of material fact concerning whether plaintiffs are entitled to such relief.

I. *Factual and Procedural Background*

On March 8, 1996, plaintiff Brooks, a K–9 officer in the Police Department, filed suit against the Village on behalf of himself and other employees similarly situated alleging that the Village violated the Fair Labor Standards Act by failing to compensate police officers for the time they spent outside normal working hours caring for Village-owned police dogs. The Village of Ridgefield Park is a municipal corporation organized under the laws of the State of New Jersey and maintains a police department pursuant to its municipal authority.

On October 31, 1996, plaintiff amended his Complaint to add a second claim alleging that the Village failed to make prompt overtime payments in violation of 29 U.S.C. § 207(a). Specifically, the second claim asserts that the Village's schedule of paying officers overtime

compensation earned in each work week on a monthly basis, with payments occurring on the pay day of the second week of the month following the month in which the overtime hours were worked, violates the FLSA. *See* Pl.'s Am. Compl. ¶¶ 22–25. Pursuant to 29 U.S.C. § 216(b), plaintiffs allege that they are entitled to liquidated damages in an amount equal to the late paid overtime compensation for the three year period immediately preceding the commencement of this action. *See id.* ¶ 28.

Between November 1996 and January 1997, seven other Village police officers joined the action as plaintiffs.[1] In June 1997, plaintiffs Brooks and Latour, the only K–9 officers and the only parties seeking relief based on the first claim of the Complaint, entered into a settlement agreement with the Village that resolved all of their claims. Thus, the only claim remaining in this lawsuit is the second claim for relief on behalf of the six police officers seeking attorney's fees and liquidated damages for the untimely payment of their overtime compensation in violation of § 207(a).

Pursuant to a collective bargaining agreement negotiated between the Village and Local 86 of the Policemen's Benevolent Association, the bargaining representative for the officers, plaintiffs were paid overtime on a monthly basis, receiving payment at the end of the second week of the month following when the overtime pay was earned. *See* Fosdick Certification ¶¶ 5–7. There is no dispute that the officers had agreed to this payment schedule in their collective bargaining agreement. On December 1, 1996, the Village began paying overtime weekly to avoid any future disputes concerning the frequency of payments. *See id.* at ¶ 11. The issue before the Court is whether the provision of the collective bargaining agreement in effect until December 1, 1996 violated § 207(a) of the FLSA, and if it did, whether this violation warrants the award of liquidated damages.

## II. *Standard for Summary Judgment*

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

At the summary judgment stage the courts function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.

## III. *Whether the Overtime Payment Schedule Violates the FLSA*

Section 207(a) of the FLSA states that "no employer shall employ any of his employees…for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed[.]" Although the FLSA does not specifically mention when such overtime compensation must be provid-

---

1. Police Officers Latour, Adams, Schwartz, Tress, McGuire, Warlikowski, and Gneiding be- came parties during this period.

ed, the Department of Labor has issued an interpretive regulation on point:

> The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106. It is undisputed that plaintiffs were paid on a weekly basis during the relevant time period. *See* Fosdick Certification ¶ 7. There is also no dispute that the Village failed to pay plaintiffs for the overtime they worked in a week on the regular pay day for that week and instead paid them for that time at the end of the second week of the following month. Thus, a police officer who worked overtime hours during the first week of a month would have to wait up to six weeks to be paid for this additional time. On its face, then, the overtime payment schedule established in the collective bargaining agreement may be in violation of the "general rule" set forth in the Department of Labor's interpretive regulation.

■ Although interpretive regulations are not officially promulgated regulations and do not have the effect of law, courts ought to show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). These interpretations do not bind a court but they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

Despite defendant's contention that there is "scant case law" pertaining to § 778.106, the Court has found that this interpretive regulation has been adopted and applied in other cases. *See, e.g., Dominici v. Bd. of Educ. of the City of Chicago*, 881 F.Supp. 315 (N.D.Ill.1995) (granting summary judgment and liquidated damages to plaintiff who claimed that employer failed to pay overtime compensation promptly); *Brennan v. New Jersey*, 364 F.Supp. 156 (D.N.J.1973) (holding that timely delivery of overtime pay is required under § 207(a) in accordance with § 778.106). Even before this interpretive regulation was promulgated in 1972, courts had construed § 207(a) to mean "that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day." *Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir.1943); *see also, Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (permitting plaintiff to recover liquidated damages because of delay in payment of overtime wages); *U.S.v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir.1960).

■ This Court finds that interpretive regulation § 778.106 is consistent with the language and rationale of the FLSA. Section 216(b) states that any employer who violates § 207(a) by failing to provide the required level of pay for overtime hours "shall be liable ... in the amount of ... their **unpaid** overtime compensation." (emphasis added). Wages only become "unpaid" when they are not paid at the proper time that they become due, namely pay day for that work period. *Cf. Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994) (holding that the state of California violated the FLSA by paying minimum wage employees 14–15 days late due to budget difficulties). If this Court were to hold that an employer is not obligated to compensate an employee for overtime worked during a given week on the regular pay day for that week, this would lead to an ambiguous standard for determining when wages become "unpaid" under the statute. Employers would then be permitted to withhold overtime compensation for some indefinite period of time without incurring any legal liability and employees would be left

with no recourse during this delay. Allowing such a delay in the payment of wages would run counter to the primary purpose of the FLSA to "protect certain groups ... from substandard wages and excessive hours." *Brooklyn Savings,* 324 U.S. at 706, 65 S.Ct. at 902.

It is true that most of the cases cited above involved a longer delay in payment than the five to six weeks involved in this case. However, this Court may not accept this relatively brief delay as permissible because such would lead to uncertainty concerning at what time an employer becomes obligated to compensate an employee for past work performed. Thus, this Court adopts the Department of Labor's interpretation of the FLSA requiring that overtime compensation be paid promptly on the regular pay day for the work period that included these overtime hours unless the exceptions found within the regulation are present.

■ Defendant contends that § 778.106 applies a *"reasonableness* standard" in determining when overtime wages must be paid. *See* Def. 's Mem. Supp. Mot. Summ. J. at 7. It is true that the interpretive regulation permits an employer to delay payment for a period "reasonably necessary for the employer to compute and arrange for payment of the amount due" if "the correct amount of overtime compensation cannot be determined until some time after the regular pay period[.]" 29 C.F.R. § 778.106. However, the Village has made no showing that it experienced any difficulty in determining the amount of overtime wages owed to plaintiffs each week. It follows then that the "general rule" requires the Village to compensate the plaintiffs for overtime on the regular pay day for each week.

■ Defendants contend that the fact that the deferred payment schedule was included in the collective bargaining agreement precludes this Court from finding that the policy was in violation of the FLSA. It is well-settled law that "FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 740–41, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641 (1981);

*see also Martino v. Michigan Window Cleaning Co.,* 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603 (1946); *Walling v. Harnischfeger Corp.,* 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945). Allowing FLSA rights to be waived by agreement would nullify one of the primary purposes for enacting the statute which was to protect certain basic employee rights from being violated by employers who are often in more powerful bargaining positions. *See Barrentine,* 450 U.S. at 740, 101 S.Ct. at 1444–45; *Brooklyn Savings,* 324 U.S. at 706, 65 S.Ct. at 902. Since this Court has found above that the FLSA guarantees employees the right to prompt payment of overtime wages, the provision of the collective bargaining agreement negotiated by the Village and the union permitting a delayed payment schedule deprived the plaintiffs of their statutory rights. The Second Circuit in *Klinghoffer* specifically stated that "the statutory requirement of prompt compensation cannot be waived by agreement." *Klinghoffer,* 285 F.2d at 491. The collective bargaining agreement here presents no bar to finding than the Village violated § 207(a), although that the Village relied on the union's agreement to this policy may affect the determination of whether the Village acted reasonably and in good faith.

In its brief, defendant quotes language from *Reich v. Interstate Brands Corp.,* 57 F.3d 574, 576 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 699, 133 L.Ed.2d 656 (1996), where the court noted that "nothing in the FLSA prevents a collective bargaining agreement from providing" a rule that differs from the "general rule" set forth in § 778.106. Defendant has quoted this language out of its context. The Seventh Circuit was referring to an agreement to pay overtime wages retroactively where the employer could not accurately calculate overtime pay owed at the end of the regular pay period. This merely restates the exception to the "general rule" of the interpretive regulation. Because the Village as not contended that it experienced any difficulty calculating overtime wages at the end of each week, retroactive payment is not proper under the regulation or *Interstate Brands.*

■ This Court finds that the Village has violated § 207(a) of the FLSA by not paying the plaintiffs their overtime compensation in a timely manner. Plaintiffs' cross-motion for summary judgment is granted in part as to liability.[2]

## IV. Whether Plaintiffs Are Entitled to Liquidated Damages

■ An employer who violates the overtime provisions of the FLSA is generally liable for the unpaid wages and an equivalent amount in liquidated damages as well as attorney's fees and costs. See 29 U.S.C. § 216(b). Because plaintiffs eventually received all of the overtime compensation to which they were entitled, they base their second claim for relief on their entitlement to liquidated damages. Although the language of § 216(b) requiring "double damages" is mandatory, Congress has provided courts with discretion to limit the award of liquidated damages:

> In any action ... to recover ... unpaid overtime compensation, or liquidated damages under the [FLSA] ... if the employer shows ... that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216].

29 U.S.C. § 260. The question is whether there exists a genuine issue of material fact concerning if the Village acted reasonably and in good faith in delaying payment of overtime wages during the relevant time period.[3]

■ When determining the appropriateness of liquidated damages, it is important to recall their purpose. "Under the [FLSA], liquidated damages are compensatory, not punitive in nature. Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir.1982). The Supreme Court also has noted that the liquidated damages provision "constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." Brooklyn Savings, 324 U.S. at 707, 65 S.Ct. at 902.

■ Plaintiffs rely on a series of Third Circuit cases that formulate a strict standard for establishing good faith and reasonableness on the part of the employer. See Pl.'s Mere. Supp. Cross–Mot. Summ. J. at 17–20. Under these cases, an employer has a " 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " Brunner, 668 F.2d at 753 (quoting Rothman v. Publicker Indus., 201 F.2d 618, 620 (3d Cir.1953)). The "good faith requirement ... requires that the employer have an honest intention to ascertain and follow the dictates of the [FLSA]." Id. This is a subjective test. See Williams v. Tri–County Growers, Inc., 747 F.2d 121, 129 (3d Cir.1984). The Third Circuit has required that an employer "show that he took affirmative steps to ascertain the Act's requirements" before employing the policy that

**2.** The Court rejects defendant's argument that the "de minimis" doctrine precludes recovery by the plaintiffs. The Village has offered no case law applying the "de minimis" doctrine to facts similar to those presented in this case.

**3.** Defendant contends that plaintiffs are not entitled to liquidated damages under the statute because § 216(b) only permits recovery for "liquidated damages in an amount equal to 'unpaid' overtime." Def's Mem. Supp. Mot. Summ. J. at 13. Since all of the overtime was eventually "paid" to the police officers, the Village argues that liquidated damages cannot be awarded un-

der the statute. The Court finds this position untenable. Allowing employers to escape liquidated damages merely by paying the wages they owe before the obligation to pay liquidated damages is adjudicated would render the remedy toothless. Defendants ignore the rationale of the liquidated damages remedy and past Supreme Court precedent addressing this very issue. See Brooklyn Savings, 324 U.S. at 711, 65 S.Ct. at 904 (finding that liability under the liquidated damages provision "is not conditioned on default [in the payment of the overdue compensation] at the time suit is begun.")

ultimately was found to be in violation of the statute. *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908 (3d Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). The reasonableness requirement is an objective test that requires the court to consider whether the employer had "reasonable grounds for believing that his conduct complie[d] with the Act[.]" *Brunner,* 668 F.2d at 753.

It is important to note that the employers in the cases cited above violated the FLSA by completely failing to pay the wages due under the Act; they did not merely delay payment for a relatively short period of time as did the Village here. The defendant employers in those cases also could not point to a collective bargaining agreement that explicitly permitted their practices. In addition, the violations of the FLSA in these cases were more egregious than the unlawful conduct here. For instance, in *Brunner,* the Department of Labor's investigation revealed extensive violations of the minimum wage, child labor, and record keeping provisions of the FLSA as well as an effort to conceal the number of hours the employees actually worked. *See Brunner,* 668 F.2d at 750. Although an employee is always required to show that it acted reasonably and in good faith to escape liquidated damages, an employer who merely delays payment for a relatively short duration pursuant to a schedule included in a collective bargaining agreement may bear a less heavy burden to show that it conformed to this standard than would an employer who never paid these wages at all. This comports with the compensatory purpose of the liquidated damages remedy since the employee who merely must wait a few weeks to obtain his overtime pay suffers less pecuniary harm than the employee who must file a claim to recover his unpaid wages.

 Defendant has submitted sufficient evidence to preclude this Court from granting summary judgment on whether liquidated damages are now appropriate. In determining if an employer acted reasonably and good faith, a court will look to the totality of the circumstances. The Village claims that it did not suspect that its payment schedule was in violation of the FLSA be-

cause the collective bargaining unit representing the plaintiffs had agreed to this payment mechanism and had never suggested or hinted that it might violate the FLSA. The collective bargaining agreement had been in effect for several years without any grievance or complaint being filed pursuant to a grievance and arbitration procedure in place. *See* Fosdick Certification ¶¶ 9–10. It is true that an employer cannot demonstrate good faith by merely showing that it has broken the law for some time without receiving any complaints. *See Tri–County Growers,* 747 F.2d at 129. Yet, the failure of employees to indicate any disagreement or complaint about a procedure in effect for several years is a factor suggesting that the employer may have honestly believed that its policy was not unlawful. *See Landaas v. Canister Co.,* 188 F.2d 768, 772 (3d Cir.1951). Furthermore, after the Complaint was amended to add this claim for late payment, the Village promptly responded by changing its policy so that overtime is now paid on a weekly basis. *See id.* ¶ 11. It is not clear from the record whether the Village sought any advice from counsel concerning the legality of the payment schedule when it drafted the collective bargaining agreement. If it did, such advice might satisfy the requirement that an employer take "affirmative steps" to determine the legality of its practice. The Village should be afforded an opportunity at trial to establish that it did take such affirmative steps.

Moreover, although this court finds that overtime wages must be paid on the regular pay day for the period in which they were earned, it is true that there are few reported decisions involving facts analogous to the circumstances in this case. Courts are more likely to find an employer's conduct to be objectively reasonable when the issue posed is an unusual question of statutory interpretation or involves unsettled law *See, e.g., Cross v. Arkansas Forestry Comm'n,* 938 F.2d 912, 918 (8th Cir.1991) ("Any uncertainty about the application of the FLSA may be considered in determining whether to impose liquidated damages."); *Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 187 (3d Cir. 1988), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988) (stating that "the

closeness of the question" affects reasonableness); *Thomas v. County of Fairfax*, 758 F.Supp. 353, 358 (E.D.Va.1991). The precise language of § 207(a) merely states that an employer must pay overtime wages; it does not explicitly refer to when such wages must be paid. Given that the Village violated a somewhat obscure interpretive regulation and that there is little case law applying this regulation to a payment schedule similar to the one here, it may well be that the Village could demonstrate that it acted reasonably in believing that it was not in violation of the FLSA.

The Court also hesitates to award liquidated damages because such damages may result in a windfall to the plaintiffs that runs contrary to the compensatory purpose of this remedy. None of the plaintiffs ever waited longer than five to six weeks to receive their overtime pay. Although the Court acknowledges that such a delay could create a certain level of hardship, the harm plaintiffs suffered is less severe than it would be if the employer had withheld compensation for an indefinite period. Permitting plaintiffs to recover the amount of overtime that they have received during the past three years as liquidated damages may punish the Village more than it would compensate the plaintiffs, thereby circumventing the compensatory purpose of the remedy.

In any event, this Court finds that there is a genuine issue of material fact concerning whether the Village acted reasonably and in good faith. The question of whether an employer acted in good faith is a fact intensive inquiry that is best left for the fact finder to determine.

V. *Conclusion*

For the foregoing reasons, the Court denies the defendant's motion for summary judgment. The Court grants in part and denies in part the motion of plaintiffs for summary judgment. The Court finds the defendant liable for violating the FLSA by delaying payment of overtime compensation and orders that plaintiffs be awarded attorney's fees and costs pursuant to 29 U.S.C. § 216(b). Summary judgment on the issue of liquidated damages is denied, and the Court orders that a trial be held to determine whether plaintiffs are entitled to such relief.

**SO ORDERED.**